JOSIAH Q. ROBINSON *vs.* EDWARD F. ENSIGN.

An attachment by an officer, of goods in the possession of another officer under a prior attachment, is void, although the keeper of the first attaching officer agrees to act also as keeper of the second; and a third creditor, though knowing all the circumstances, may make a valid second attachment by delivering his writ to the first attaching officer.

An officer, who attaches and sells on execution goods held by another officer on a prior attachment, and afterwards again attached by that officer, and pays off the debt to secure which the first attachment was made, is liable, in an action by the first officer, for the full value of the goods.

A deputy sheriff, for the taking of goods from his possession, by another deputy of the same sheriff, may maintain an action against the sheriff.

ACTION OF TORT against the sheriff of this county, by one of his deputies, for the taking and conversion, by another of his

deputies, of iron held under attachment by the plaintiff. Trial in the court of common pleas, before *Byington*, J., to whose rulings the defendant alleged exceptions. The facts are stated in the opinion.

DEWEY, J. The plaintiff seeks to recover damages in an action of tort for the wrongful conversion of certain iron described in his writ.

He clearly had a special property in the same, under the finding of the jury, which would authorize the maintaining of an action against the proper party. His special property is shown by the facts, that he had, as a deputy sheriff, attached the iron on a writ in favor of the Western Railroad Corporation against the Cheshire Iron Works, and placed the same under a keeper to take the charge thereof on his behalf; and that, while thus in his possession under such attachment, he had again attached the property at the suit of James Butler, which latter suit was duly entered in court, and proceeded to judgment, and the execution issuing thereupon was duly placed in the hands of the plaintiff within thirty days from the rendition of such judgment.

This second attachment, the defendant alleges, was of no validity, or if of any effect, was postponed, to take effect only after sundry attachments made by Howland, another deputy of the defendant, and that the property was all properly taken by Howland by virtue of the writs of attachment in his hands against the Cheshire Iron Works. Howland made that attachment of the iron without moving it, leaving it in the possession of Lowe, the keeper of the plaintiff, who also consented to act as keeper of Howland. All this preceded the attachment made on Butler's writ by the plaintiff.

If there was nothing else to defeat the attachment on Butler's writ, then it would seem quite plain that the attachment by Howland was of no validity. It was directly in violation of the principle, that there cannot be two distinct attachments of the same goods by two different deputy sheriffs. If goods are to be attached at the suit of a second creditor, the attachment must be made by the officer who already has the possession

under the first attachment. *Vinton* v. *Bradford*, 13 Mass. 113. The plaintiff had made an effectual prior attachment in behalf of a creditor, and had the legal possession of the property. Such being the case, the attachment on the writ in favor of Butler would be a valid attachment, and the plaintiff would have a right to the possession of the property by virtue of such second attachment, as against an attempted attachment made by another officer on behalf of other creditors.

Had the defendant been able to satisfy the jury of the further facts set up in his defence, namely, that the attorney of the Western Railroad Corporation, upon whose attachment the goods were held by the plaintiff, had agreed with Howland to release and dissolve that attachment, and that Howland might at once attach and take into his possession the said property, and hold the same to be applied in favor of the creditors for whom he held writs of attachment and execution, it might have been held that this would discharge the possession of the plain-tiff, and give validity to the attachment by Howland, and thereby effectually defeat the subsequent attachment by the plaintiff in favor of Butler. Upon this point the presiding judge instructed the jury in favor of the defendant; and had they found the position, thus taken by the defendant, to be maintained by the evidence in the case, they must have returned their verdict in his favor.

Some question was made as to the measure of damages. The plaintiff held the property as special owner, by virtue of the two attachments, of the Western Railroad Corporation and of Butler. As to the latter, the execution issuing upon the judgment was duly placed in his hands to be levied upon the property, and he was bound to keep the same for making such levy. It is said, that the amount of the judgment in favor of the Western Railroad Corporation should be deducted from the value of the iron taken by Howland, as that was a prior attachment to that of Butler. It was so ; and that having been paid to the Western Railroad Corporation, it seems equitable, apparently, that such deduction should be made. But there is this legal difficulty : The debt of the Western Railroad Corporation

had priority, only if duly placed in the hands of the plaintiff for the purpose of being levied upon the property, by virtue of the original attachment. But it seems to have been paid to the creditor's attorney by Howland, out of the avails of the sale of the iron ; the balance of such sales being applied to other creditors, on executions in the hands of Howland. As it seems to us, the prior lien of the Western Railroad Corporation over that of Butler was lost by the withdrawal of that execution ; and the whole property under attachment by the plaintiff, and which had been wrongfully taken by Howland, was legally holden by the plaintiff for the benefit of Butler. Under these circumstances, the court properly declined to instruct the jury that the amount of the execution in favor of the Western Railroad Corporation should be deducted from the value of the property taken by Howland.

Nor can the defendant avoid his liability to the present action, upon the ground that the attorney who instituted the suit for Butler had notice of what had been done by Howland in attaching the iron ; as the attorney might well act upon his further knowledge that a second attachment could not be legally made by another officer while the property continued in the possession of the first attaching officer.

The case presented is one of tortious taking by Howland of goods in the possession of the plaintiff, and for which the plaintiff is responsible over to Butler for the value thereof, to be applied in discharge of the execution in favor of Butler against the Cheshire Iron Works. If the action had been instituted against Howland, no further question would arise as to the right of the plaintiff to maintain the action. But the action is brought against the sheriff of the county, seeking to charge him with the defaults of Howland, who was his deputy ; and the further inquiry is, whether the present plaintiff can maintain such an action against the sheriff.

No doubt exists as to the general liability of the sheriff, *civiliter*, for the defaults of his deputies, whether of malfeasance or nonfeasance, as to acts done under color of office. This extends to trespasses, as well as to neglects of official duty,

whereby another party sustains an injury. Having clothed the party with official rank and authority, the law deems him responsible for the acts of his deputy. If this property had been tortiously taken by Howland from the possession of one entirely unconnected with the sheriff, such person would be entitled to recur at once to the sheriff for damages.

But it is contended that, because the plaintiff is himself a deputy sheriff, holding his appointment under the defendant, and acquired his special property in the discharge of his official duty, he cannot maintain an action against the sheriff.

At an earlier period in our judicial decisions, the view taken by some of our eminent jurists seems to have been, that our deputy sheriffs stood in the same relation to the sheriff as the under sheriffs or bailiffs did in England to their sheriffs. Hence it was assumed, that no difficulty would exist in making a second attachment by another deputy of goods previously attached, in the possession of the first attaching officer; and also that no action could properly be instituted by one deputy sheriff against another deputy, for a tortious taking of property from his possession under color of attachment, but that all such disputes between deputies of the same sheriff must be adjusted by the sheriff. By Parsons, C. J. in *Watson* v. *Todd*, 5 Mass. 275. By Sewall, J. in *Perley* v. *Foster*, 9 Mass. 113.

Under the countenance of these opinions, and upon the hypothesis that our deputies had the same relation to the sheriff as in England, it was strongly urged by the counsel for the defendant, in the case of *Draper* v. *Arnold*, 12 Mass. 449, that no action would lie against a deputy sheriff for any default in the duties of his office; and it was fully admitted by the court, that, by the well established common law doctrine in England, the sheriff alone could be sued for any default of his deputy, occurring in the discharge of the duties of his office. But the court held the doctrine not applicable here; there being a broad distinction between the offices of deputy sheriffs here and under-sheriffs in England. With us, deputy sheriffs are officers of the government; known and recognized as such by our statutes; treated as civil officers; holding appointments as such; and

required to qualify for the discharge of their duties, by taking the usual oaths administered to other officers of the government.

The case last cited was soon followed by the case of *Thompson* v. *Marsh*, 14 Mass. 269, which more directly bears upon the present question, and is decisive in fixing the character of these officers, as having individuality, and clothed with full powers to protect themselves against tortious acts of others, interfering with the proper discharge of their official duties, by instituting actions at law in their own names.   That was an action by a deputy sheriff against another deputy of the same sheriff.   That case settled the law as to the right of one deputy to sue another in trover, for attaching and removing property already attached by, and in legal possession of the party suing.   It gave full effect to the principle stated in *Vinton* v. *Bradford*, 13 Mass. 114, that the deputies of the same sheriff must often be considered several officers, with distinct rights, and acting under distinct liabilities.

In *Gordon* v. *Jenney*, 16 Mass. 469, which was replevin by one deputy against another, of property tortiously taken away from the plaintiff, who was the first attaching officer, it was held that such action might well be maintained, notwithstanding the relation existing between the parties, as deputies of the same sheriff; the court saying, " although servants of the same master, they act independently of each other."

The principle to be extracted from these cases is, that deputies of the same sheriff are separate officers, with distinct rights, and are equally liable to other deputies for their tortious acts, as to other parties.   One deputy may, under color of official duty, trespass upon the rights of another deputy, and, if so, the law gives the right to the injured party to institute his action therefor.   It disregards the fact, that they are in some sense servants of the same master, by holding office under appointments from the same source.

The present plaintiff has established a case of injury affecting his rights, committed by a deputy of the defendant, under color and by virtue of the office of deputy sheriff, which he holds

26 *

under the defendant. Why should not he have the same rem‑ edy as any other person would have for the like injury, by recurring to the sheriff, whom the law has made responsible for official acts of his deputy? For any similar wrongful taking of property of any person else, by the same deputy, by making an unauthorized attachment of goods, the sheriff would be held liable. The action, although in form against the sheriff, and so brought to secure the benefits of his greater responsibility, is yet only an action founded on the tortious acts of Howland, his deputy. The action is substantially an action against the deputy, who is immediately answerable over to the sheriff upon his bond, and against whom the verdict may be used as evi‑ dence to establish the claim of the sheriff against him. *Tyler* v. *Ulmer*, 12 Mass. 166. By sustaining this action, we only give full effect to a well settled general principle, that whenever the deputy is liable for any misfeasance done under color of his office, or in the discharge of official duties, the sheriff is also liable. *Exceptions overruled.*

*J. C. Wolcott*, for the defendant, cited, to the point that a deputy sheriff cannot maintain an action against the sheriff for the misfeasance of another deputy of the same sheriff, *Per‑ ley* v. *Foster*, 9 Mass. 112; *Vinton* v. *Bradford*, 13 Mass. 114; *Denny* v. *Willard*, 11 Pick. 519; *Brown* v. *Crockett*, 22 Maine, 540; to the point that, by the consent of Lowe to act as keeper for Howland, the prior attachment was lost, *Burlingame* v. *Bell*, 16 Mass. 318; and to the point that the fact that Butler's attorney had notice of Howland's act, when he directed the attachment, prevented Butler from acquiring any rights under it, *Townsend* v. *Newell*, 14 Pick. 332; *Whitaker* v. *Sumner* 20 Pick. 406; *Gordon* v. *Jenney*, 16 Mass. 469.

*H. L. Dawes*, for the plaintiff.